**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

THE INNISFREE FOUNDATION,
INC.,

            Plaintiff,

     V.

NEW JERSEY DEPARTMENT OF
EDUCATION; ANGELICA
ALLEN MCMILLAN, in her
official capacity as
Commissioner of Education and
JEANNETTE LARKINS, in her
official capacity as
Records Custodian,


            Defendants.

No. 1:21-cv-17672-NLH-MJS

**OPINION**

---

JEFFREY IAN WASSERMAN
WASSERMAN LEGAL LLC
1200 ROUTE 22 EAST
SUITE 2000, #2238
BRIDGEWATER, NJ 08807

    *Counsel for Plaintiff*


MICHAL CZARNECKI
LAURIE LEE FICHERA
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET - P.O. BOX 112
TRENTON, NJ 08625

    *Counsel for Defendants*

**HILLMAN**, District Judge

Currently before the Court is the Motion to Dismiss of Defendants New Jersey Department of Education ("NJDOE"), Angelica Allen-McMillan, in her official capacity as Commissioner of Education (the "Commissioner"), and Jeannette Larkins, in her official capacity as Records Custodian (the "Records Custodian")(collectively, "Defendants").  (ECF 18). Defendants seek dismissal of a complaint filed by The Innisfree Foundation, Inc. ("Plaintiff").  For the reasons that follow, Defendants' motion will be granted.

**BACKGROUND**

I.   The IDEA

Though Plaintiff presents claims under laws other than the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, et seq., Plaintiff's primary assertion for this Court's subject matter jurisdiction centers on the Defendants' alleged failure to honor a mandatory public disclosure obligation found in the IDEA.  To place this claim in context, a threshold understanding of the IDEA is necessary in order to understand the factual allegations that underlly the instant Complaint.  Therefore, the Court will provide some color on the IDEA as a statutory and regulatory scheme before discussing the factual and procedural background in this matter.

Congress enacted the IDEA to, among other things, ensure

that "the rights of children with disabilities and parents of such children are protected . . . ."  20 U.S.C. § 1400(d)(1)(B). The IDEA requires that every child with a disability receive a free appropriate public education (a "FAPE") from their public school if that school receives federal funding under the IDEA. Id. at § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" that participating public schools must comply with.  Id. at § 1412(6)(A); § 1415(a).  One such procedural safeguard provides standards for adjudicating disputes about whether a school has adequately provided a FAPE.  This administrative process begins with the filing of a "due process petition" or "due process complaint."  Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to such child."
Id. at § 1415(b)(6).

The IDEA further contemplates that it is the State
Educational Agency that is responsible for making sure that
there are fair and impartial procedures in place to handle any
due process petition.  Id. at §1415 (f)(1)(A) ("Whenever a
complaint has been received under subsection (b)(6) or (k), the
parents or the local educational agency involved in such
complaint shall have an opportunity for an impartial due process
hearing, which shall be conducted by the State educational
agency or by the local educational agency, as determined by
State law or by the State educational agency.").  Once a due
process complaint has been filed, Congress has set strict
deadlines by which certain events must occur.  See id. at §
1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due
process hearing"); 34 C.F.R. § 300.515(a) (setting forth a
strict timeframe for due process petition resolution); N.J.A.C.
6A:14-2.7(j) (same).

Beginning with the date the due process complaint is filed,
the parties have thirty days within which to settle or otherwise
resolve the dispute to the satisfaction of the parent and child.
See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b).  This
period is referred to as the "resolution period."  If the case
is not resolved during the resolution period, it may proceed to

a hearing.  Congress has called these "due process hearings."
In New Jersey, "[a] due process hearing is an administrative
hearing conducted by an administrative law judge" in the Office
of Administrative Law ("OAL").  N.J.A.C. 6A:14-2.7(a).  "If the
local educational agency has not resolved the complaint to the
satisfaction of the parents within 30 days of the receipt of the
complaint, the due process hearing may occur, and all of the
applicable timelines for a due process hearing under this
subchapter shall commence."  20 U.S.C. § 1415(f)(1)(B)(ii); 34
C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final
decision shall be rendered by the administrative law judge . . .
after the conclusion of the resolution period . . . .").

Once the 30-day resolution period ends, federal regulations
require that due process petitions be decided by hearing
officers within 45 days, unless either party requests specific
adjournments.  34 C.F.R. § 300.515(a) (states receiving federal
funding "must ensure that not later than 45 days after the
expiration of the 30 day period under § 300.510(b) . . . (1) A
final decision is reached in the hearing; and (2) A copy of the
decision is mailed to each of the parties.").  New Jersey's
Administrative Code contains a similar requirement.  N.J.A.C.
6A:14-2.7(j) ("A final decision shall be rendered by the
administrative law judge not later than 45 calendar days after
the conclusion of the resolution period . . . .").

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered.  See N.J.A.C. 6A:14-2.7(j) (stating that the 45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.").  No other delays are contemplated.  Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period.  34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).  The Court refers to this requirement as the "45-Day Rule."

As noted above, the 30-day resolution period and the 45-Day Rule are part and parcel of a larger set of the "procedural safeguards" Congress included in the IDEA to ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed.  Another procedural safeguard, one at the heart of this matter, is a mandatory provision that parties to a due process hearing, and derivatively the larger public, have a right to a written

decision by the agency or person adjudicating a due process complaint.  20 U.S.C. § 1415(h)(4).

With that overview, the Court turns to Plaintiff's allegations.

II.  <u>Facts Salient to the Motion to Dismiss</u>

For purposes of this motion to dismiss, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  Plaintiff is a non-profit organization whose mission is to serve families in New Jersey. (ECF 1 at 3).  In particular, Plaintiff alleges that one key group that makes up its constituent base is families with disabled children for whom it hopes to secure the best possible educational experience.  (<u>Id.</u>).  Plaintiff states that at all times relevant to the events in its Complaint, it was serving at least one family with a disabled child.  (<u>Id.</u>).

Plaintiff states that on May 13, 2021, it sent a public records request under the New Jersey Open Public Records Act, N.J.S.A. 47:1A-1, <u>et seq.</u>, ("OPRA") to NJDOE seeking written decisions from the OAL concerning any issue before it, including orders approving or enforcing settlements, as well as civil court decisions from a federal or state court issued on appeal from an administrative proceeding.  (<u>Id.</u> at 8).  Plaintiff further alleges that on July 30, 2021, it received an email from the Records Custodian indicating that NJDOE would only be

7

providing final decisions issued after a fully adjudicated
hearing before the OAL.  (Id. at 9).  Plaintiff responded via
email on August 5, 2021, again demanding the requested documents
be produced.  (Id.).  It also indicated that NJDOE failed to
disclose final decisions made prior to a due process hearing,
interlocutory decisions made in advance of a due process
hearing, and decisions approving settlements with the settlement
agreement included on its website as required by 20 U.S.C. §
1415(h)(4) and N.J.S.A. 18A:46-1.2.  (Id.).  By September 24,
2021, discussions between Plaintiff and NJDOE had broken down
and NJDOE reiterated that it would only be producing final
decisions.  (Id.).

Thereafter, on September 27, 2021, Plaintiff commenced the
instant action with the filing of the Complaint.  (See generally
id.)  Plaintiff contends that Defendants were required to
produce the requested records under the IDEA, OPRA, and New
Jersey's Common Law Right of Access.  (Id. at 10-12).

Plaintiff presents six counts on which it contends that it
is entitled to relief: (1) declaration that NJDOE violated the
IDEA under the Declaratory Judgment Act, 28 U.S.C. § 2201, et
seq.; (2) violation of the right to access under the IDEA, 20
U.S.C. § 1415; (3) violation of OPRA, N.J.S.A. 47:1A-1, et seq.;
(4) violation of the New Jersey common law right to access; (5)
injunctive relief against the Commissioner under 42 U.S.C. §

1983; and (6) violation of the New Jersey Civil Rights Act,
N.J.S.A. 10:6-2, et seq.  The Court addresses Defendants' motion
to dismiss against this procedural and factual backdrop.

## DISCUSSION

### I.  Standard of Review

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957) and Sanjuan v. Am. Bd. of Psychiatry & Neurology,
Inc., 40 F.3d 247, 251 (7th Cir. 1994) and then citing Papasan

v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and (3) "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is

10

plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

Rule 12(b)(1) governs Defendants' motion to the extent it challenges Plaintiff's action on standing and immunity grounds. "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A

11

factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'" Id. (alteration in original) (quoting Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that motions to dismiss for lack of standing are best understood as facial attacks.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing.").  In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard.  Id. ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim . . . ."); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").  Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

II.   <u>Analysis</u>

The Court must first determine whether Plaintiff has alleged claims that allow the Court to exercise federal question jurisdiction over the federal claims and supplemental jurisdiction over the state law claims.  The Court holds that Plaintiff has not alleged a viable federal question.  Therefore, the Court lacks supplemental jurisdiction to opine on the state law claims.  There are two components to this conclusion. First, this Plaintiff does not have standing to bring a claim under the IDEA.  Second, and accordingly, Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

<u>A. Standing to Bring the IDEA Claim.</u>

There are two types of standing salient to this analysis, constitutional standing and statutory standing.  Constitutional standing comes from the requirement under Article III of the Constitution that federal courts only hear "cases and controversies."  <u>Bank of Am. Corp. v. City of Miami</u>, 581 U.S. 189, 196 (2017) ("To satisfy the Constitution's restriction of this Court's jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing.").  There are three components to constitutional standing.  <u>Id.</u>  First, the plaintiff must have suffered an "injury-in-fact that is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical."

Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 415 (3d
Cir. 2013) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560
(1992)).  Second, the injury must be fairly traceable to conduct
of the defendant and not some independent third-party.  Id.
"Third, it must be likely, as opposed to merely speculative,
that the injury will be redressed by a favorable decision." Id.
(quoting Lujan, 504 U.S. at 560).

Even if constitutional standing is satisfied, where it is
not clear that Congress has granted a right of action to the
plaintiff, the Court must undergo an analysis of statutory
standing.  This question involves determination as to whether
the plaintiff "has a cause of action under the statute."
Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S.
118, 128 (2014).  In undertaking this inquiry, the Court "do[es]
not ask whether in [its] judgment Congress should have
authorized [a plaintiff's] suit, but whether Congress in fact
did so." Id. (emphasis in original).  The Supreme Court has
stated that this inquiry requires the use of traditional tools
of statutory interpretation to determine whether the plaintiff
is in the "zone of interests" such that "a legislatively
conferred cause of action encompasses a particular plaintiff's
claim."  Id. at 127.

Congressional intent is the touchstone in determining
whether Congress has created a private right of action for a

14

plaintiff or class of plaintiffs.  Courtney v. Ivanov, 41 F.
Supp. 3d 453, 458 (W.D. Pa. 2014).  Without statutory intent
from Congress, "a cause of action does not exist and courts may
not create one, no matter how desirable that might be as a
policy matter, or how compatible with the statute." Alexander
v. Sandoval, 532 U.S. 275, 286–87 (2001).  "The judicial task is
to interpret the statute Congress has passed to determine
whether it displays an intent to create not just a private right
but also a private remedy."  Id. at 286.

Using this framework, the Court first looks to see if this
Plaintiff has standing under the IDEA.  Plaintiff proffers 20
U.S.C. § 1415(h)(4) as the authority for its right to sue.  (ECF
1 at 8).  Section 1415(h) reads:

> Any party to a hearing conducted pursuant to subsection
> (f) or (k), or an appeal conducted pursuant to subsection
> (g), shall be accorded . . . (4) the right to written,
> or, at the option of the parents, electronic findings of
> fact and decisions, which findings and decisions (A)
> shall be made available to the public consistent with
> the requirements of section 1417(b) of this title
> (relating to the confidentiality of data, information,
> and records). . .        .

Id.

Plaintiff's contention is that the language "shall be made
available to the public" gives them the right to sue as they are
an aggrieved member of the public who did not receive the
"findings of fact and decisions" as requested.  (ECF 25 at 15).

The Court holds that Plaintiff does have constitutional

standing.  First, Plaintiff has alleged that it has suffered an
injury in fact in that it specifically alleges that it was
deprived of records to which, as a member of the public, it
should have had access as decreed by Congress.  (ECF 1 at 2).
This satisfies the first prong of the constitutional standing
analysis that a plaintiff allege a concrete or imminent injury
in fact.  Edmonson, 725 F.3d at 415.  Second, Plaintiff clearly
outlines how the alleged injury is traceable to Defendants in
that Plaintiff explains how NJDOE had custody of the requested
records and has affirmatively refused to produce them.  (ECF 1
at 8-9).  Thus, the second prong is also satisfied.  Edmonson,
725 F.3d at 415.

     The third and final requirement of constitutional standing,
redressability by this Court, is also satisfied, albeit on a
more tenuous basis.  For redressability to be satisfied, this
Court must have the authority to order the requested relief.
Bank of Am. Corp., 137 S. Ct. at 1302.  Plaintiff is asking the
Court for an order declaring that NJDOE has violated the IDEA
and various New Jersey laws and compelling NJDOE to publish or
produce the requested documents.  (See generally ECF 1).  As
outlined below, the Court's authority to provide such relief
cannot come directly from the IDEA.  However, this Court could
envision an order it could properly issue that would provide the
relief requested.  Toll Bros. v. Twp. of Readington, 555 F.3d

131, 143 (3d Cir. 2009) (holding that where a hypothetical order from the court granting the requested relief would be substantially likely to redress a plaintiff's injury, the third prong of standing would be satisfied).

Even if Plaintiff has constitutional standing, the Court must also find that there is statutory standing for Plaintiff to bring its claim under the IDEA. First, in looking at section 1415(h)(4) the Court notes that there is no explicit grant to the public of a right to sue. The provision states that findings and decisions "shall be made available to the public" but does not say anything about a mechanism for the public to be able to enforce the provisioning of records from due process hearings.

That does not end the inquiry, though. As the Supreme Court has made clear, the key is the intent of Congress. Alexander, 532 U.S. at 286. This requires a more comprehensive and searching view of the IDEA as a statutory scheme to determine if such intent exists. As noted, § 1415, entitled "Procedural Safeguards" primarily contemplates safeguards for parents and their children, and other than the passing reference cited by the Plaintiff, no one else. Section 1415(a) specifically mandates that the state agencies receiving funding under the IDEA develop procedures "to ensure that children with disabilities and their parents are guaranteed procedural

17

safeguards . . . ."  20 U.S.C.A. § 1415(a).  In terms of the statute's explicit grant of the right to file a civil action, § 1415(i)(2)(A), that section limits the parties who can file an action in court to "[a]ny party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection . . . ." 20 U.S.C. § 1415(i)(2)(A).

Unlike parents and their disabled children, Plaintiff is not an "aggrieved party" by a decision made under subsection (f), which deals with decisions made by hearing officers at the OAL in due process hearings or (k) which deals with placement of a child in an alternative educational setting by school personnel.  There is no reading of the grant of authority to file a civil action in subsection (i) that extends beyond those directly affected by the due process hearings for placement of students, specifically parents and students.  An entity that makes a records request cannot reasonably be read to fit into that grant of a cause of action by Congress.

The Court holds that where Congress has shown its ability to clearly delineate a cause of action under the IDEA, the negative implication canon has particular salience.  The Supreme Court has succinctly described the canon as "[t]he expression of one thing implies the exclusion of others . . . ." Jennings v.

18

Rodriguez, 138 S. Ct. 830, 844 (2018) (citing A. Scalia & B. Garner, Reading Law 107 (2012)).  The canon is context dependent in that it can be overcome by "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion . . . ."  Marx v. Gen. Revenue Corp., 568 U.S. 371, 381 (2013) (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)).  Proper application of the canon also requires a court to determine that "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it . . . ."  Id. (quoting Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)).

Here, Congress included explicit language in § 1415(i) defining who is an aggrieved party able to commence a civil action.  By the language of the statute, such aggrieved persons are only those who are complaining of the outcome of due process hearings or alternative educational placements to which they were parties.  The public, as mentioned in the adjacent subsection § 1415(h), tellingly is not characterized as an aggrieved party.  Rather, the public only receives a passive mention as a group to whom findings and decisions shall be available.  Looking at the language leading up to the mention of the public in subsection (h), it is clear that the safeguards in (h), including publication to the public, are meant to protect parties to due process proceedings.  The beginning of (h) begins

by framing its safeguards as being "accorded" for parties to

hearings or appeals.  20 U.S.C. § 1415(h) ("Any party to a

hearing conducted pursuant to subsection (f) or (k), or an

appeal conducted pursuant to subsection (g), shall be accorded .

. . .").  The Court will not read in a right of action for the

public where Congress has not expressed an intent to create one.[1]

City of Phila. v. Sessions, 280 F. Supp. 3d 579, 617 (E.D. Pa.

Nov. 15, 2017) ("Where Congress includes particular language in

one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts

---

[1] This conclusion is bolstered by the available legislative
history for the 2004 amendments to the IDEA.  The Third Circuit
has made clear that "[l]egislative history is only an
appropriate aid to statutory interpretation when the disputed
statute is ambiguous." United States v. Kouevi, 698 F.3d 126,
133 (3d Cir. 2012).  Based on the foregoing analysis, the Court
finds the text of § 1415 straightforward on its own.  To the
extent that there is any ambiguity, though, the Court's
understanding of the statutory text is consistent with the
legislative history.  Senate Report 108-85 which was submitted
by the Committee on Health, Education, Labor, and Pensions on
November 3, 2003 describes the purpose of § 1415(h) as listing
"the procedural safeguards rights that are available to any to a
due process hearing or an appeal[.]" S. Rep. No. 108-185, at 70
(2003).  It describes § 1415(i) as a mechanism to file suit for
"any party aggrieved by the findings and decision in a hearing."
Id.  Nothing in this history foreshadows a Congressional intent
to confer a right of action on members of the public who request
records of hearings and finds the legislative history consistent
with its interpretation of the statutory text.  In re Pittsburgh
& Lake Erie Props., Inc., 290 F.3d 516, 520 (3d Cir. 2002)
("Although we need go no further than the text of Section 103(h)
together with the text and structure of Subchapter IV in order
to determine the former's meaning, we also note that
the legislative history and our prior caselaw are
both consistent with this reading.").

intentionally and purposely in the disparate inclusion or exclusion."(quoting Russello v. United States, 464 U.S. 16, 23 (1983))); see also Aponik v. Verizon Pa. Inc., 106 F. Supp. 3d 619, 624 (E.D. Pa. May 21, 2015) ("As the ADA lists specific remedies and physical injury is not among them, and we will not read into the ADA a remedy that Congress was at pains not to mention.").  The Court holds that there is no general right of action for a member of the public not a party to a due process adjudication to sue under the IDEA under the public disclosure obligation set forth in 20 U.S.C. § 1415(h)(4) and must dismiss that claim.[2]

B. Statement of Claim Under § 1983

The Court now turns to Plaintiff's other claim that could provide a basis for this Court's exercise of subject matter jurisdiction, namely its claim under 42 U.S.C. § 1983.  That

---

[2] Separately, the Court notes that courts have been careful to scrutinize claims by organizations under the IDEA on the basis that they represent the interests of parents and children who have undergone due process hearings.  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 288 (3d Cir. 2014) (hewing close to the statutory intent in the IDEA that the right to initiate a civil action was meant to benefit parents and students); Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d 13, 34 (1st Cir. 2019) (discussing the need for individuals bringing civil actions under the IDEA to have exhausted administrative remedies under the rationale that organizations should not be able to circumvent that requirement).  This situation, where a third-party organization is requesting records of hearings in which it was not involved, as laudatory as a matter of public policy and government transparency that effort may be, is even further afield from the text of the statute.

claim must be dismissed because, as set forth above, Plaintiff has not identified a federal right it has standing to bring.

Defendants argue that the § 1983 claim is barred by the Eleventh Amendment.  That claim is made only against the Commissioner.  (ECF 1 at 16-17).  The relief requested is a declaration that NJDOE violated the IDEA and related regulations by its breach of the provision requiring public access to IDEA adjudication records, compelling the Commissioner to correct those practices, and awarding reasonable attorneys fees and costs.  (Id. at 17).  Defendants argue that (1) NJDOE is a New Jersey State executive branch agency entitled to Eleventh Amendment Immunity and (2) none of the Defendants has waived their right to Eleventh Amendment Immunity.  (ECF 18 at 34).

Under the landmark decision in Ex parte Young, a federal court, consistent with the Eleventh Amendment, "may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state . . . ."  Quern v. Jordan, 440 U.S. 332, 337 (1979).  While the Eleventh Amendment generally divests federal courts of subject matter jurisdiction over suits brought by private parties against a state, three exceptions to the general rule apply.  First, suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the

Ex parte Young doctrine.  Pa. Fed'n of Sportsmen's Clubs, Inc.
v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citing MCI Telecomm.
Corp. v. Bell Atl. Pa., 271 F.3d 491, 502 (3d Cir. 2001) and Ex
parte Young, 209 U.S. 123, 159–60 (1908)).  Second, a state may
be sued directly if Congress has abrogated the state's immunity
from suit through an unequivocal expression of its intent to do
so and pursuant to a valid exercise of its powers.  See Seminole
Tribe of Fla. v. Florida, 517 U.S. 44, 54–55 (1996).  Finally,
individuals may sue a state that has properly waived its
sovereign immunity and consented to suit.  Id.

     "In determining whether the Ex parte Young doctrine avoids
an Eleventh Amendment bar, the Supreme Court has made it quite
clear that 'a court need only conduct a "straightforward inquiry
into whether [the] complaint alleges an ongoing violation of
federal law and seeks relief properly characterized as
prospective."'"  Hess, 297 F.3d at 324 (alteration in original)
(quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S.
635, 645 (2002)).

     Defendants are certainly correct that to the extent that
Plaintiff intends to name NJDOE as a defendant for the purposes
of the § 1983 claim, NJDOE is entitled to Eleventh Amendment
immunity.  C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d
Cir. 2000) ("The Department of Education is a state agency and
as such is immune from suit in a federal court without regard to

the nature of the relief sought."). Plaintiff also makes clear in its opposition brief that it is only suing the Commissioner under the § 1983 claim. (ECF 25 at 28-29). Because Plaintiff is seeking prospective injunctive relief against the Commissioner, the claim is not barred by the Eleventh Amendment. Pa. Fed'n of Sportsmen's Clubs, Inc., 297 F.3d at 323.

However, even if the claim is not barred by the Eleventh Amendment, to state a claim for relief under § 1983, a plaintiff must still allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus, 641 F.3d at 563.

Plaintiff's § 1983 claim fails on the first prong because it has not demonstrated the violation of a federal right. As the Supreme Court has explained, "In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997), holding modified by Harz v. Borough of Spring Lake, 191 A.3d 547 (N.J. 2018). To be deemed a right, there are three factors that must be assessed. Id. "First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected

by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States."  Id. at 340-41 (citations omitted).

Plaintiff's claim fails here for the same reasons that its claim under the IDEA fails: there is no federal right that grants the public a general cause of action to sue when materials related to due process proceedings are not released under 20 U.S.C. § 1415(h) to someone who is not a party to the administrative process.[3]  Plaintiff cites to 34 C.F.R. 300.513(d)(2), the regulation corresponding to § 1415(h), as the basis for its § 1983 claim.  (ECF 1 at 16).  That provision states, "[t]he public agency, after deleting any personally identifiable information, must . . . [t]ransmit the findings and decisions referred to in § 300.512(a)(5) to the State advisory

---

[3] The Court takes this opportunity to delineate the key differences present between this matter and C.P. v. NJDOE, 1:19-cv-12807-NLH-MJS (D.N.J. 2019) ("C.P. Matter"), another matter dealing with the IDEA and § 1983 that is pending before this Court.  In the C.P. Matter, the Court explained that it was allowing the § 1983 to proceed alongside the IDEA claim because the § 1983 was based on a separate constitutional property right under the Fourteenth Amendment, not the IDEA in and of itself. (C.P. Matter, ECF 391 at 49).  In so holding, the Court noted the jurisprudence establishing that there was a constitutional property right to an education. (Id. at 49-50).  Plaintiff's § 1983 claim in the instant matter is not tethered at all to a constitutional right, but rather the text of the IDEA itself. (ECF 1 at 16-17).  That is not sufficient to state a claim under § 1983.

panel established under § 300.167; and [m]ake those findings and decisions available to the public." 34 C.F.R. § 300.513(d). Just as with Plaintiff's count under the IDEA, Plaintiff has not pointed to a provision of federal law that grants them a cause of action when NJDOE does not make public due process findings and decisions. Indeed, this is the source of the federal right to which Plaintiff anchors its § 1983 claim. Plaintiff's claim fails at the first step outlined by the Supreme Court in Blessing in that it has not pointed to a provision of law that Congress clearly intended to benefit this Plaintiff.[4] Blessing, 520 U.S. at 340. As explained above, the provision of the IDEA that requires findings and decisions of due process proceedings to be made public was not written to benefit the public at large, but rather parties to the proceedings.

Plaintiff does not purport to tie its § 1983 claim to any other federal right or law and thus its § 1983 claim must be dismissed. Washington v. Hanshaw, 552 F. App'x 169, 172 (3d Cir. 2014) ("Section 1983 does not confer any substantive rights. Rather, it 'merely provides a method for vindicating

---

[4] The Court notes the Third Circuit's statement that "a § 1983 action is not available to remedy violations of IDEA-created rights . . . ." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 802 (3d Cir. 2007). The Court is cognizant of A.W.'s guidance, but the Court does not base its holding on A.W. as it has determined that there is no IDEA-created right here.

federal rights elsewhere conferred.'  Thus, '[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed.'") (internal citation omitted) (alteration in original) (quoting Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

    C. Plaintiff's Remaining State Law Claims

    As the Court will dismiss all of the claims that provide federal question jurisdiction, there is no diversity between the parties, and because this case is at an early stage of litigation, the Court will dismiss the state law claims. Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."); Nabelsi v. Holmdel Twp., No. 20-20702, 2021 WL 5578851, at *12 (D.N.J. Nov. 30, 2021) ("Because I dismiss all federal law claims, and there is no diversity between the parties, I decline to exercise supplemental jurisdiction over the state claims . . . .").[5]

---

[5] The Court also notes that Plaintiff's claim under the Declaratory Judgment Act is not a standalone basis for this Court to exercise subject matter jurisdiction.  Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs., 2 F.4th

**CONCLUSION**

For the reasons expressed in this Opinion, Defendants' motion to dismiss (ECF 18) will be granted.  Although the Court is mindful of an obligation to offer amendment in civil rights cases generally because ofttimes additional facts may round out a plausible claim, here any amendment would be futile as a matter of law as no private right of action exists under the IDEA or the Constitution on the basis articulated by Plaintiff.[6]

An appropriate Order will be entered.


Date: February 21, 2023                    s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

121, 132 (3d Cir. 2021) ("The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not independently grant subject-matter jurisdiction.").

[6] While District courts "should freely give leave to amend when justice so requires," Schomburg v. Dow Jones & Co., 504 F. App'x 100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal alterations omitted), it is equally true that "leave to amend ordinarily should be denied . . . when amendment would be inequitable or futile," id.  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (quoting Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).